# Davis, Appellant, v. Pennsylvania Coal Company.

*Negligence—Mines and mining—Ambulance—Evidence.*

A coal mining company cannot be charged with liabi ity for the death of a miner, on the ground that it had failed to comply with the requirements of the statute which imposed on it the duty to maintain an ambulance at its mine and to cause any employee who might be injured to be conveyed at once to his home, where the only testimony relied on to establish a causal connection between the failure of the company to have an ambulance at the mine, and the death of the miner, is that of a woman who dressed the latter's wounds, and who testified to a belief not founded on her observation and experience, and for which she could give no substantial reason, that if the miner had been removed to his home immediately after he was taken from the mine, she could have saved his life.

Argued April 13, 1904. Appeal, No. 5, Jan. T., 1904, by plaintiffs, from judgment of C. P. Luzerne Co., Jan. T., 1901, No. 162, on verdict for defendant in case of Alexander Davis and Edith Davis, Committee of the Estate of Mary M. Edwards, v. Pennsylvania Coal Company. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before LITTLE, P. J.

At the trial it appeared that the negligence alleged was failure upon part of the defendant to comply with section 8 of article 17 of the Act of June 2, 1891, P. L. 176, which reads as follows:

" That for any injury to person or property occasioned by any violation of this act or any failure to comply with its provisions by an owner, operator, superintendent, mine foreman or fire boss of any coal mine or colliery, a right of action shall accrue to the party injured against said owner or operator for any direct damages he may have sustained thereby; and in case of loss of life by reason of such neglect or failure aforesaid, a right of action shall accrue to the widow and lineal heirs of the person whose life shall be lost, for like recovery of damages for the injury they shall have sustained."

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant. Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendant.

*Wm. C. Price,* with him *Harold J. Mahon,* for appellant, cited: Christner v. Coal Co., 146 Pa. 67; Fink v. Garman, 40 Pa. 95.

*J. B. Woodward,* of *Woodward, Darling & Woodward,* with him *Willard, Warren & Knapp,* for appellee.

OPINION BY MR. JUSTICE FELL, May 9, 1904:

The negligence alleged is that the defendant failed to comply with the requirements of a statute which imposed on it the duty to maintain an ambulance at its mine, and to cause any employee who might be injured to be conveyed at once to his home, by reason of which neglect it is claimed that an employee did not receive care and medical treatment that would have prevented his death. Edwards, an assistant mine foreman, went into a mine with Clark, another assistant foreman, to clean up a fall and to examine the works in the vein in which it had occurred. The mine was not in operation on account of a strike and they were the only men in it at the time of the accident. Each had a naked lamp, and Clark had a safety lamp in his pocket. When they reached the bottom of the shaft, Edwards asked Clark to light his safety lamp. He refused to do this, saying it was unnecessary, because he had never found gas in that part of the mine. As they walked to the place of the fall Edwards was behind Clark about one hundred feet. Clark's lamp caused an explosion which killed him instantly, and so injured Edwards that he died the next day. Edwards was taken from the mine to a building near the mouth of the shaft, where his burns were at once treated by the engineer, the superintendent and others. These men had frequently seen burns treated and knew what to do in the emergency. They removed the clothing from the parts of his body burned and applied cotton waste thoroughly saturated with oil, wrapped him up as warmly as possible, and administered stimulants. The ambulance, which was a mile away at another mine or another part of the same mine, arrived by the time they had prepared him for removal and he was taken to his home

two and a half miles distant.   He arrived at his home about
an hour and a half after he was removed from the mine and
at the same time that a woman who had been sent for to treat
his burns reached there.   This woman was not a physician,
but she had had a large experience in the treatment of burns
and was known in the neigborhood as " the burn doctor."   She
re-dressed the burns in substantially the same manner as they
had been dressed before, and gave the patient stimulants.
Seven or eight hours later she became alarmed at his condition
and sent for a physician, who found Edwards suffering from
shock which caused his death.

The only testimony relied on to establish a causal connec-
tion between the failure of the defendant to have an ambu-
lance at the mine and the death of Edwards was that of the
woman who dressed his wounds, who testified to a belief that
if he had been taken to his home immediately after he was
removed from the mine she could have saved his life.   Shadowy
and uncertain as such testimony is, had the belief expressed
by this witness been founded on her observation and experi-
ence or had she been able to give any substantial reason for it
that would have warranted others in accepting it, there would
have been a question for the jury.   But it was a belief appa-
rently entertained without reason and blindly persisted in in spite
of knowledge.   As evidence of a fact in the case it amounted
to nothing.   This witness admitted that the proper practice
was to treat burns as soon as possible ; and that she had before
testified in the same case and still believed that it is better to
treat burns as soon as the injured person is brought from the
mine than to wait until he has been removed to his home.
The physician who attended Edwards, called by the plaintiff,
testified that there was a possibility that his life might have
been saved if a physician had been called at once, and that if
any chance had been lost it was because of the failure to call
a physician sooner.   As there was no proof that death resulted
from the default of the defendant, a fact essential to recovery,
a verdict was properly directed for it.   This view of the case
makes it unnecessary to consider the question of contributory
negligence.

The judgment is affirmed.